## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SLEEPER MARKETS LLC,<br>548 Market Street, PMB 95988, San<br>Francisco, CA 94104,<br><br>       Plaintiff,<br><br> v.<br><br>COMMODITY FUTURES TRADING<br>COMMISSION, 1155 21st Street NW,<br>Washington, DC 20581, and<br><br>CAROLINE D. PHAM, in her official<br>capacity as Acting Chairman of the<br>Commodity Futures Trading Commission,<br>1155 21st Street NW, Washington, DC 20581,<br><br>      Defendants. | Civil Action No. 25-cv-3444<br><br>**COMPLAINT FOR INJUNCTIVE<br>AND DECLARATORY RELIEF** |

Plaintiff Sleeper Markets LLC ("Sleeper"), through its counsel, brings this action against Defendants the Commodity Futures Trading Commission (the "CFTC" or "Commission") and Caroline D. Pham, Acting Chairman of the CFTC, for violations of the Due Process Clause of the Fifth Amendment of the United States Constitution and the Administrative Procedure Act (the "APA"), 5 U.S.C. § 701, and alleges as follows:

## NATURE OF THE ACTION

1. This case is about the CFTC flagrantly ignoring applicable law, regulations, and decades of practice to block—without process or explanation—what should have been a routine application to serve as a broker in the derivatives markets. In doing so, it is cutting off access to, and limiting the growth of, those markets without cause, and at great harm to Sleeper, which is not only being deprived of its due process rights but also losing significant business opportunities because of the arbitrary and capricious nature of the CFTC's actions. Baffled by the obstruction of

what should have been a straightforward matter, Sleeper has repeatedly sought clarity from the CFTC, which first responded with obfuscation, which quickly turned to a telling silence. With nowhere left to turn, Sleeper now seeks relief from this Court against the CFTC and its sole commissioner, Acting Chairman Caroline D. Pham.

2.     Sleeper is in the business of offering various fantasy sports services. Seeing an opportunity to expand its business and offer new services to its customers, Sleeper decided to seek registration as a futures commission merchant ("FCM") with the CFTC. An FCM acts as a broker in the derivatives markets, allowing its customers access to buy and sell products traded on CFTC-regulated designated contract markets ("DCMs").[1]

3.     FCM registration should be, and historically has been, a straightforward process. The Commodity Exchange Act, 7 U.S.C. § 1 et seq. (the "CEA"), requires that applicants for FCM registration ***shall*** be registered ***upon application*** unless the applicant has certain disqualifying characteristics. Although the CFTC oversees registration, the National Futures Association ("NFA")[2] has performed the CFTC's registration function for over 40 years pursuant to a delegation of authority from the CFTC. *See* Performance of Registration Functions by National Futures Association, 49 Fed. Reg. 39593 (Oct. 9, 1984).

4.     The CFTC has promulgated extensive rules governing NFA's disposition of FCM registration applications, as well as the limited circumstances in which the CFTC may intervene in NFA's registration determinations.

---

[1] A DCM is a board of trade that has applied for and received an order of designation by the CFTC to list derivatives for trading and execution by members of the public. *See* 7 U.S.C. §§ 6, 7(a).

[2] NFA is a registered futures authority pursuant to Section 17 of the CEA, 7 U.S.C. § 21, and in that role it operates as a duly authorized independent self-regulatory authority. It is currently the only registered futures association.

5.    Sleeper submitted its FCM application to NFA on May 30, 2025, and NFA first advised Sleeper that the application was complete on August 28, 2025. Sleeper bears none of the disqualifying characteristics enumerated in the CEA that would bar its registration. NFA has repeatedly advised Sleeper and its counsel that Sleeper's application is complete and that NFA requires no further information from Sleeper. Accordingly, under normal circumstances, Sleeper would now be registered and operating as an FCM under the supervision of the CFTC and NFA.

6.    However, without any basis in the CEA or the CFTC's rules, and in a departure from over 40 years of custom and practice, the CFTC has intruded on NFA's FCM registration process to thwart Sleeper's application.

7.    Specifically, the CFTC has instructed NFA to not approve its application as would be done in the normal course. Instead of following the statutorily prescribed approval process, the CFTC instructed NFA to divert Sleeper's application to the CFTC for review and approval. Based on information and belief, the CFTC has taken these unusual and unauthorized steps due to unspecified concerns about certain CFTC-regulated derivatives offered by DCMs on which Sleeper would enable its own customers to trade those products. That concern is entirely untethered from Sleeper or its application: FCMs have no say in the certification and listing of products offered by DCMs. Sleeper is not operating as a DCM and has not sought registration as a DCM. That is, Sleeper is not seeking to become a DCM in order to create products others can trade; it only seeks to provide its customers access to products offered by DCMs in accordance with the CEA and CFTC regulations.

8.    The CFTC has given no notice to Sleeper of this review and has denied (both to Sleeper and to the public) that it has initiated such a review. As recently as September 15, 2025,

the CFTC has stated that the review and approval of FCM applications is NFA's responsibility alone.

9.      In the meantime, the CFTC has refused to engage with Sleeper or provide an explanation for the delay in Sleeper's registration.

10.     NFA's registration process assures applicants a fair process in an orderly timeframe, which is undermined if those rules are not followed. For example, while the CFTC can challenge NFA's findings once NFA grants or denies an application, NFA's findings are "conclusive" if supported by the weight of the evidence, and applicants are entitled to a formal hearing under some circumstances. In accordance with the CEA, the CFTC's delegation of authority to NFA, and the CFTC's own rules regarding applications for registration and NFA's processing thereof, the CFTC should not act as an interloper in the application approval process for registration until NFA has issued a decision on an FCM application. At that point, and only at that point, the CFTC may review, affirm, overrule, or modify NFA's decision. However, the CFTC's supervisory review of NFA's decisions affords applicants the benefit of NFA's initial factual findings, which "***shall be conclusive***" if supported by the weight of the evidence. 7 U.S.C. § 21(o)(2) (emphasis added).

11.     While the CEA includes a provision which states that nothing in the delegation of authority to NFA "shall affect the Commission's authority to review the granting of a registration application by" NFA, *id.* § 21(o)(3), CFTC review and supervisory authority is limited to a review ***after*** NFA has made its decision. In other words, any CFTC authorized review should occur after NFA has made its determination, but nothing in the CEA or rules promulgated thereunder permits the CFTC to intercede or interfere with the process prior to a determination by NFA.[3]

---

[3] The sole exception which would allow the CFTC to deny or conditionally grant an application is in those circumstances where an applicant bears certain disqualifying characteristics. *See* 7 U.S.C.

12.     Under current leadership, the CFTC has ignored the legal registration and FCM approval process that the agency itself has established; in doing so, the CFTC effectively is denying Sleeper a registration that NFA would have already granted but for the CFTC's unlawful and unwarranted intervention.

13.     As NFA has acknowledged, Sleeper's application is complete and has complied with all requirements for registration. As NFA has made clear to Sleeper, none of the grounds for disqualification or denying the application exist.[4] The law provides that NFA **shall** grant the application, and NFA would have, but for the CFTC's imprudent meddling. While the CFTC certainly has the right to review and potentially challenge NFA's findings, that authority only exists once NFA has resolved the application. By ignoring the authority it has delegated to NFA—and seeking to influence, change, or delay NFA's disposition—the CFTC has deprived Sleeper of the fair treatment to which it is entitled under the CEA.

14.     Given that NFA was prepared to grant Sleeper's application, the CFTC's interference at this stage is, standing alone, improper. But it has also impeded and delayed the normal process to Sleeper's detriment. The CFTC's improper use of its influence to prevent NFA from performing functions that it is required by law to perform—and a function NFA would have performed but for the CFTC's intrusion—is manifestly unfair and violative of the protections

---

§ 12a. Such circumstances do not exist with respect to Sleeper's application, and CFTC has not suggested otherwise despite ample outreach by Sleeper. In any event, review under 7 U.S.C. § 12a requires notice, and it may also entail a formal hearing depending on the reason for refusing to register an applicant.

[4] NFA is responsible for screening FCM applicants and their principals to ensure that they are not subject to one of the enumerated disqualifying circumstances events listed in the CEA. In performing this function, NFA conducts an extensive background check and review of the disciplinary history of each FCM applicant.

provided by the CEA, the CFTC's own rules and normal practice, and the due process rights afforded by the Fifth Amendment of the U.S. Constitution.

15.    In interfering with Sleeper's registration, the CFTC and CFTC Acting Chairman Caroline D. Pham have violated Sleeper's property interest in pursuing FCM business activities and obtaining a registration that, absent the CFTC's unexplained interference, would have been a certainty. The CFTC's interference in NFA's routine activities also constitutes an abuse of the federal administrative process. It is an unlawful withholding of agency action and an unreasonable delay in agency action. The CFTC's misconduct with respect to Sleeper's application is an arbitrary and capricious agency action that is not in accordance with the law and exceeds its statutory authority. Sleeper therefore seeks an order: (A) declaring the CFTC's and Acting Chairman's interference with NFA's registration of Sleeper as an FCM unlawful; and (B) enjoining the CFTC from interfering with NFA's rendering of a determination on Sleeper's application and to refrain from further interference that is not in accord with the procedures prescribed by the CEA and applicable rules.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction because this action arises under the Fifth Amendment to the U.S. Constitution and the APA. 28 U.S.C. § 1331.

17.    Sovereign immunity poses no bar to this action. 5 U.S.C. § 702.

18.    Venue is proper in this district because a substantial part of the events or omissions giving rise to this action occurred in this district, Defendant the CFTC resides and has its headquarters in this district, and Defendant Caroline D. Pham is an officer of the United States who is being sued in her official capacity. 28 U.S.C. § 1391(b)(2), (e)(1).

## PARTIES

19.     Sleeper is a Delaware limited liability company with a business address in San Francisco, California. Sleeper is a wholly owned subsidiary of Blitz Studios, Inc.

20.     The CFTC is an independent agency of the U.S. government that is charged with regulating the U.S. derivatives markets and the trading of futures, swaps, and certain kinds of options thereon.

21.     Caroline D. Pham, an individual who is being sued in her official capacity, is the Acting Chairman of the CFTC and currently the only CFTC Commissioner.

## BACKGROUND

22.     FCMs are financial institutions that perform critical functions necessary for the efficient operation of derivatives markets like DCMs regulated by the Commission. FCMs place customer orders for derivatives listed on DCMs and facilitate the execution and clearing of the resulting transactions.

23.     FCMs are subject to the requirements of the CEA and the CFTC's rules and regulations promulgated thereunder. 7 U.S.C. §§ 2(a)(1), 6(a), 6d. With certain exceptions (such as an entity trading only for itself), the CEA requires that any entity seeking to operate as an FCM register with the CFTC. *Id.* § 6d(a)(1); *see also id.* § 12a(1). Registration with the CFTC as an FCM requires the applicant to submit an application:

> in such form and manner as prescribed by the Commission, giving such information and facts as the Commission may deem necessary concerning the business in which the applicant is or will be engaged, including in the case of an application of a futures commission merchant . . . , the names and addresses of the managers of all branch offices, and the names of such officers and partners, if a partnership, and of such officers, directors, and stockholders, if a corporation, as the Commission may direct.

*Id.* § 6f(a)(1).

24.     The registration process is straightforward and non-discretionary. The CEA mandates that, unless an FCM applicant presents certain disqualifying criteria, its registration must be granted. 7 U.S.C. § 6f(a)(1) ("[a]ny person desiring to register as [an FCM], introducing broker, floor broker, or floor trader hereunder *shall be registered upon application*") (emphasis added). The CEA enumerates the only circumstances in which registration may be denied or granted on a conditional basis. 7 U.S.C. § 12a(2)-(4). Such circumstances generally involve suspension or revocation of a prior registration or engagement in financial crimes or misconduct. *See id.* A residual provision allows denial of registration "after opportunity for hearing" if "there is other good cause." *Id.* § 12a(3)(M).

25.     CFTC rules prescribe the procedures that it must follow in seeking to deny, condition, suspend, revoke, or restrict registration. 17 C.F.R. § 3.60. Specifically, "the Commission may at any time give written notice to any applicant for registration" that the Commission intends to take such action. *Id.* § 3.60(a). That notice must advise the applicant or registrant that: (1) "[t]he Commission alleges and is prepared to prove that the registrant or applicant is subject to one or more of the statutory disqualifications"; and (2) the Commission's allegations, "if true, constitute a basis upon which registration may be denied, granted upon conditions, suspended, revoked or restricted." *Id.* § 3.60(a)(1)-(2). CFTC rules set forth a procedure for the applicant's or registrant's response, the CFTC Division of Enforcement's reply, an oral presentation before (absent summary disposition by) an administrative law judge, the administrative law judge's issuance of a detailed written determination, and the filing of any appeal. *Id.* § 3.60(b)-(f), (j).

26.     Although registration of FCMs was originally a direct responsibility of the CFTC, the CFTC delegated registration authority to NFA in 1984. Performance of Registration Functions

by National Futures Association, 49 Fed. Reg. 39593; *see* 7 U.S.C. § 12a(10); 17 C.F.R. § 3.2(a).

In the notice memorializing that delegation, the CFTC stated:

> Based upon NFA's commitments and the ***congressional intent that NFA assume responsibility under the Act for the registration of FCMs***, CPOs, CTAs, and their APs, ***NFA's representations concerning the adoption of rules, standards and procedures to be followed in administering these functions, and the need that these functions be performed in the most efficient, cost-effective manner***, the Commission has determined, in accordance with its authority under section 8a(10) of the Act, ***to authorize NFA on or before December 31, 1984, to process and grant applications for initial and renewed registration with the Commission of FCMs*** . . . .

Performance of Registration Functions by National Futures Association, 49 Fed. Reg. at 39597 (emphases added).

27.     NFA has since performed this function under the CFTC's oversight. The CFTC's supervisory powers "include the ability to review NFA's disciplinary actions, review and/or approve NFA's rules, abrogate NFA's rules or require NFA to change or supplement its rules." *The CFTC at 50: Examining the Past and Future of Commodity Markets: Hearing Before the H. Comm. on Agric.*, 119th Cong. 25 (2025) (statement of Thomas W. Sexton III, President and Chief Exec. Officer, Nat'l Futures Ass'n) (footnote omitted); *see* 7 U.S.C. § 21. However, nothing in the CEA or applicable rules allows the CFTC to usurp the role of NFA in making an initial decision on Sleeper's FCM application.

28.     The CFTC agrees. In a statement provided to the website Law360 on Monday, September 15, 2025, the CFTC stated, "[a]s a general matter, the CFTC is tasked with establishing the rules and regulations for operating in U.S. derivatives markets, but not the review and approval of FCM applications. This has long been the responsibility of the National Futures Association." Aislinn Kelly, *Sports Betting Co. Accuses CFTC of Blocking Its Registration*, Law360 (Sept. 15, 2025), https://www.law360.com/securities/articles/2387974/sports-betting-co-accuses-cftc-of-blocking-its-registration.

29.     The CFTC and NFA each specify requirements for FCM registration applications. CFTC regulations require, among other things, that FCMs submit a Form 7-R and Form 1-FR-FCM, 17 C.F.R. § 3.10(a)(1)(i)-(ii), and comply with the CFTC's financial reporting regulation governing FCMs, *id.* § 1.10. Those regulations also provide that NFA shall perform registration functions "in accordance with such rules, consistent with the provisions of the Act and this part, applicable to registrations granted under the Act that [NFA] may adopt and are approved by the Commission." *Id.* § 3.2(a). The CFTC deems applications filed with NFA "to have been filed with, and to be the official record of, the Commission." *Id.* § 3.2(d).

30.     The NFA Registration Rules are available on NFA's website. *Registration Rules*, NFA, https://www.nfa.futures.org/rulebooksql/rules.aspx?Section=8 (last visited Sept. 26, 2025); *Futures Commission Merchant (FCM) Registration*, NFA, https://www.nfa.futures.org/registration-membership/who-has-to-register/fcm.html (last visited Sept. 26, 2025). NFA Registration Rule 204 governs FCM registration. It reiterates the CFTC's Form 7-R requirement and requires payment of a registration fee, submission of an Acknowledgement of Conditioned Registration if such registration will be subject to conditions, and additional fees and application materials for the applicant's principals, as well as documentation demonstrating compliance with various CFTC regulations. NFA Registration Rules r. 204(a). That rule also makes clear that "[w]hen NFA determines that an applicant for registration as an FCM . . . and all of its principals appear fit for registration, NFA ***will*** provide notification to the applicant that the applicant's registration ***is granted***." *Id.* r. 204(a)(3) (emphases added).

31.     The CEA establishes a thorough framework for NFA's authority and the CFTC's oversight role of NFA with respect to the registration functions it performs. *See* 7 U.S.C. §§ 12a(10), 21. That framework explicitly addresses FCM registration functions and contemplates

extensive delegation of those functions: the CFTC may "authorize any person to perform any portion of [the CFTC's] registration functions, *id.* § 12a(10); in turn, NFA "may issue orders (A) to refuse to register any person, (B) to register conditionally any person, (C) to suspend the registration of any person, (D) to place restrictions on the registration of any person, or (E) to revoke the registration of any person," *id.* § 21(o)(2). The CFTC may review the final decision of NFA, in which case NFA's findings "as to the facts, if supported by the weight of the evidence, shall be conclusive" and, absent review, "the order of [NFA] shall be considered to be an order issued by the Commission." *Id.*

32.     This framework does not allow the CFTC to intrude on NFA review and approval of applications for CFTC registration. *See* 7 U.S.C. § 1 et seq. Nor do ***any*** CFTC regulations. *See* 17 C.F.R. ch. I. Rather, those regulations provide only for two areas of CFTC oversight of futures associations like NFA: registration of futures associations, *id.* pt. 170, and review of the ***final decisions*** of futures associations with respect to disciplinary, membership, and registration decisions, *id.* pt. 171.

33.     To wit, CFTC rules permit the agency's operating divisions to request that the Commission "institute review of [an NFA] proceeding" "[a]t any time prior to the effective date of a final decision of [NFA] in a . . . registration action." *Id.* § 171.31(a). CFTC rules also prescribe the procedure that an operating division must follow in doing so. *Id.* Specifically, the division must "file and serve a memorandum requesting the Commission to institute review." *Id.* NFA "may file a response . . . within fifteen days of the service of the memorandum." *Id.* § 171.31(b).

34.     The Commission also "may take review [of an NFA decision] on its own motion." *Id.* § 171.31(d). In doing so, the Commission "shall by order establish the procedure for submission of both the record of the proceeding and the briefs of the parties." *Id.*

35.     CFTC rules establish rigorous standards governing the Commission's review. *See id.* § 171.34(c). Under those standards, "the Commission shall affirm the order of [NFA] unless the Commission" makes at least one of four findings: (A) that the proceeding was "not conducted in a manner consistent with fundamental fairness," (B) that the proceeding was "conducted in a manner inconsistent with [NFA] rules," (C) that "[t]he weight of the evidence does not support the findings made or adopted in the final decision," or (D) that NFA's conclusion "is not consistent with the purposes of the [CEA]." *Id.* §171.34(c)(1)-(4).

36.     A final decision reviewable by the Commission is a "decision that terminates the proceeding before [NFA] on the action that is subject of the notice of appeal filed with the Commission." *Id.* § 171.2(d). A registration action is "any proceeding brought by [NFA], pursuant to authority delegated by the Commission, to grant, condition, deny, suspend, restrict, or revoke the registration of any person." *Id.* § 171.2(l). CFTC rules do not provide for the Commission's interim review or stay of NFA proceedings. *See* 17 C.F.R. ch. I. Rather, this supervisory review occurs only after a final decision by NFA.

37.     The NFA Registration Rules enumerate four types of registration-related NFA proceedings: "proceeding[s] to deny, condition, suspend, or revoke registration." NFA Registration Rules r. 501(a). Routine processing of a registration application is not an NFA proceeding; rather, "[w]hen NFA determines that an applicant for registration . . . and all of its principals appear fit for registration," NFA simply "provide[s] notification to the applicant that the applicant's registration is granted." *Id.* r. 204(a)(3). CFTC's own rules do not give it authority to intervene midstream in NFA's processing of applications.

38.     The CEA establishes a "form and manner" standard for new applicants; when those requirements are met, applicants "shall" be registered with the CFTC. Congress authorized the

CFTC to delegate this function, and the CFTC and NFA in turn have promulgated a robust web of rules—in addition to multiple provisions of the CEA—governing the registration process. Congress did **not** give the CFTC power to interrupt this simple form-and-manner review based on judgmental factors, for prudential reasons, or to accommodate potential policy preferences of agency leadership. Nor did the CFTC give itself or NFA such wide discretion. Nor did Congress do so in authorizing the NFA to perform the registration function in lieu of the CFTC. Instead, the law is clear—an application like Sleeper's must be approved once NFA deems it to be complete and concludes that no disqualifying circumstances exist. Only at that point can the CFTC "decline review or grant review and affirm, set aside, or modify" an NFA registration order, or "review the granting of a registration application" by NFA. 7 U.S.C. §21(o)(2)-(3). That is all the power Congress gave the CFTC. It has grossly exceeded that authority here.

## FACTUAL ALLEGATIONS

39.     Sleeper operates a mobile application and website through which it historically has offered various fantasy sports offerings, including traditional free-to-play games such as fantasy football and basketball leagues, as well as paid fantasy sports games colloquially referred to as "daily fantasy sports." In the Spring of 2025, Sleeper decided to expand its offerings by seeking registration as an FCM.

40.     On May 30, 2025, Sleeper submitted its application for FCM registration. In the ensuing weeks and months, Sleeper cooperated with NFA to ensure that the application was completed and approved as quickly as possible. NFA periodically requested information or documentation from Sleeper, which Sleeper promptly provided.

41.     NFA's review of the application lasted three months. On or about August 28, 2025, NFA advised Sleeper that its application was complete and that NFA was prepared to approve Sleeper's FCM registration no later than September 4, 2025.

42.     Sleeper's application satisfied all CFTC and NFA requirements for registration as an FCM, and none of the criteria that would disqualify an FCM applicant apply to Sleeper.

43.     Nevertheless, on information and belief, on or before August 28, 2025, and in a departure from decades of practice and the regulatory scheme, the CFTC instructed NFA not to approve Sleeper's application and to withhold such approval until the Commission provided permission to NFA to proceed.

44.     On information and belief, this action was driven by unspecified concerns harbored by the Commission regarding the propriety of certain types of derivatives that are or will be listed on DCMs. As an FCM, Sleeper plays no role in the self-certification and listing of derivatives on a DCM. That is because FCMs merely provide customers with access to buy and sell the contracts that DCMs list. Thus, any reasons the CFTC may have for its unauthorized interference in NFA's registration approval are completely misdirected.

45.     On September 4, 2025, counsel for Sleeper spoke with NFA staff and asked for further confirmation that Sleeper's application was complete. NFA staff again advised that Sleeper's application was complete, and NFA had no further questions and required no additional information from Sleeper.

46.     As detailed above, the relevant regulations provide the CFTC with the authority to review, upon notice, final decisions of NFA. On information and belief, NFA has not yet issued a final decision on Sleeper's application because of the CFTC's instruction to NFA not to do so. The CFTC has not provided Sleeper with notice that the Commission is undertaking a review of Sleeper's application. Nevertheless, in an effort to facilitate the granting of its application, and notwithstanding the departure from historical practice, Sleeper has repeatedly requested that the

CFTC review Sleeper's application based on its understanding that the CFTC planned to review the application before NFA approved it.

47.     On the morning of September 5, 2025, Sleeper's counsel convened a telephone call with the CFTC Acting General Counsel, Meghan Tente. During that call, the Acting General Counsel claimed—contrary to NFA's August 28, 2025 representation to Sleeper—that the Commission believed Sleeper's application was incomplete. The Acting General Counsel also claimed—again contrary to NFA's August 28, 2025 representation to Sleeper—that the Commission had not received Sleeper's application materials from NFA.

48.     On the same day, Sleeper's counsel issued a formal demand letter to the CFTC Acting Chairman Caroline D. Pham. In that letter, Sleeper: (A) detailed its concerns regarding the CFTC's treatment of its application and the conflicting representations it had received from the Commission and NFA; (B) notified the Commission that it is acting against Sleeper in an arbitrary and capricious manner, denying Sleeper due process, and irreparably harming Sleeper's interests; and (C) demanded that Sleeper's application be approved without further delay. Sleeper further noted that the Commission had taken no action for several days since intervening to postpone NFA's grant of the registration and that, during that time, Sleeper had received no information from the Acting Chairman's office or other CFTC staff regarding the reasons for the CFTC's decision to review the application, the status of that review, or the date by which it would conclude its review.

49.     The CFTC Acting General Counsel responded by email later that evening, copying the Acting Chairman and certain NFA staff. In that email, the Acting General Counsel: (A) denied that the CFTC staff had instructed NFA not to approve Sleeper's FCM application pending the Commission's review; (B) denied that this action resulted from the Commission's unspecified

concerns regarding the propriety of certain derivatives that are or will be listed on a DCM; and (C) denied that the decision on Sleeper's application had been with the Commission for several days and that Sleeper had received no information from the CFTC during that time. The Acting General Counsel offered to schedule a call with Sleeper for the week of September 8, 2025.

50.     Sleeper's counsel promptly scheduled a call with the Acting General Counsel for the morning of September 8, 2025. During that call, the Acting General Counsel requested an additional 24 hours to ascertain the status of Sleeper's FCM application. The Acting General Counsel did not reassert or otherwise raise the denials set forth in her September 5, 2025 email, nor did she address the location of any physical or electronic copy of Sleeper's application for FCM registration.

51.     That evening, the Acting General Counsel proposed via text message to speak again with Sleeper's counsel at 9:30 a.m. the following day. Sleeper's counsel agreed.

52.     On September 9, 2025, at 9:27 a.m., the Acting General Counsel notified Sleeper's counsel that she was "sick in bed" and "out today" and that the Acting Chairman was "on a flight" and also unavailable. The Acting General Counsel suggested that Sleeper's counsel could "call [the Acting Chairman] tonight" or speak with the Acting General Counsel the next day.

53.     Later that morning, Sleeper's counsel emailed the Acting Chairman and proposed a call for that evening. In the email, Sleeper's counsel noted that Sleeper's understanding continued to be that its FCM application was complete and that the delaying of its approval was resulting in ongoing harm to Sleeper.

54.     Sleeper's counsel received no response.

55.     Neither Sleeper nor its counsel has received any contact from the CFTC since the morning of September 9, 2025.

56.    Also on September 9, 2025, counsel for Sleeper again spoke with NFA staff and again asked for confirmation that Sleeper's application was complete. NFA staff again advised, as they had on August 28, 2025 and September 4, 2025, that Sleeper's application was complete and NFA required no further information.

57.    On September 10, 2025, Sleeper's counsel emailed Thomas W. Sexton III, President and CEO of NFA, and requested confirmation that Sleeper's application was complete ready for approval. Later that day, Mr. Sexton responded in relevant part:

> I have a few team members travelling today and would like to talk with them to confirm there are no changes to the discussion's content. Therefore, please give me until tomorrow to confirm and if you do not hear from me by mid-morning CT you can assume that there are no changes.

58.    Neither Mr. Sexton nor any other NFA staff contacted Sleeper or Sleeper's counsel on the following day, September 11, 2025. At no point since August 28, 2025 has anyone at NFA provided Sleeper with any suggestion that its application is incomplete.

59.    On September 12, 2025, Sleeper's counsel emailed Mr. Sexton and stated that, "[c]onsistent with all our correspondence and other communications to date, we understand Sleeper's application to be complete." Mr. Sexton did not reply or otherwise dispute Sleeper's understanding.

60.    Also on September 12, 2025, Sleeper submitted a complaint to the Offices of the Inspectors General of the CFTC and the Department of the Treasury regarding the delay in the approval of Sleeper's FCM application (the "OIG Complaint").

61.    On Monday, September 15, 2025, in response to press coverage of the OIG Complaint, the CFTC issued a statement to a legal news service stating that the CFTC "does not have the application in question, and has not reviewed or requested to review the application." The CFTC also stated that "[a]s a general matter, the CFTC is tasked with establishing the rules and

regulations for operating in U.S. derivatives markets, but not the review and approval of FCM applications. This has long been the responsibility of the National Futures Association."

62.    On Thursday, September 18, 2025, Sleeper's counsel participated in a call with Mr. Sexton and Tim Elliott, Vice President, General Counsel and Secretary of NFA. During that call, counsel reiterated his understanding that NFA considered Sleeper's application for registration as an FCM to be complete, that no further information from Sleeper was required, and that NFA was prepared to approve the application but for the insistence of the CFTC that NFA hold off on doing so. NFA did not dispute counsel's statements.

63.    On Monday, September 22, 2025, Sleeper's counsel once again contacted Acting Chairman Pham—copying the Acting General Counsel—to reiterate Sleeper's concerns and to seek an action on Sleeper's FCM application.

64.    Neither Acting Chairman Pham nor the Acting General Counsel responded.

65.    To date, Sleeper's application for registration as an FCM has not been approved, and the CFTC continues to use an unauthorized pocket veto to prevent Sleeper's registration.

66.    This lack of approval is improper. The CEA provides that "[a]ny person desiring to register as [an FCM], introducing broker, floor broker, or floor trader hereunder ***shall be registered upon application***." 7 U.S.C. § 6f(a)(1).

67.    The CFTC has delegated registration authority to NFA. *See* 17 C.F.R. §§ 3.2(a), 12a(10). As such, the initial review and approval of FCM applications is the responsibility of NFA.

68.    NFA considers Sleeper's application to be complete, and absent CFTC's intrusion, Sleeper would be registered as an FCM.

69.    Only once NFA has made a determination with respect to Sleeper's registration may the CFTC review, affirm, overrule, or modify NFA's determination, and even then, NFA's findings

"as to the facts, if supported by the weight of the evidence, shall be conclusive." 7 U.S.C. § 21(o)(2). While nothing in this clause "shall affect the Commission's authority to review the granting of a registration application by a registered futures association," *id.* § 21(o)(3), that review and supervisory authority is limited to a review *after* NFA has made its determination, at which time Sleeper would be afforded the formal procedural protections.

70.    Even if the CFTC did have the review authority it is currently exercising over Sleeper's application, the CFTC it is not conducting any such review for the purpose of making a determination on that application. At no point has the CFTC issued inquiries or requests for further information to Sleeper regarding its application, *see* 17 C.F.R. pt. 3, app. A, or given written notice to Sleeper that the CFTC intends to take action denying, conditioning, or restricting its registration. *See* 17 C.F.R. § 3.60. And, on information and belief, the CFTC has not instituted a review of NFA's actions with respect to Sleeper's application. *See* 17 C.F.R. pt. 171. In short, Sleeper's application is somewhere and nowhere at the same time. The law does not allow for such regulatory superposition.

71.    As such, the CFTC has interfered with NFA rendering its determination with respect to Sleeper's application. That interference has disrupted NFA's registration process, which otherwise assures applicants a fair, rules-based process in an orderly timeframe and requires that the registration "shall" be granted in Sleeper's case.

72.    As a result of the lack of approval of its FCM application, Sleeper is being harmed because of the loss of substantial business opportunities it would obtain by operating as an FCM.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
### Violation of Due Process Clause of Fifth Amendment to U.S. Constitution

73.    Sleeper realleges all prior paragraphs.

74.     Sleeper's submission of an application for FCM registration created a property interest protected by the Fifth Amendment of the U.S. Constitution. NFA's confirmation that Sleeper's application is complete and ready for approval confirms the existence of that property interest.

75.     The Fifth Amendment guarantees that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

76.     A federal agency's deprivation of a property interest without due process violates the Fifth Amendment.

77.     Laws that substantially limit a federal agency's discretion in disposing of applications for a license or registration, and that therefore ensure licensure or registration a certainty or near certainty upon the satisfaction of applicable objective criteria, create a property interest protected by the Fifth Amendment.

78.     The CEA and the CFTC's own rules substantially limit the discretion in disposing of applications for FCM registration and permit denial of such applications only under enumerated circumstances that do not exist here. Because the law entitles Sleeper to FCM registration upon satisfactory completion of an application, and an initial determination by NFA on that application, the CFTC is not permitted to deprive Sleeper of that registration through unlawful interference in the mandated registration process.

79.     The CFTC and Acting Chairman Pham have obstructed, and are continuing to obstruct, NFA's approval of Sleeper's application for FCM registration and have prohibited NFA from granting registration. Defendants have identified no good faith basis or proper motive, let alone any basis in the law, for the conduct alleged herein.

80.     The Defendants' conduct violates implicates Sleeper's above-described property interest and violates Sleeper's fundamental right to due process of law in violation of the Fifth Amendment.

**SECOND CLAIM FOR RELIEF**
**Violation of Administrative Procedure Act**

81.     Sleeper realleges all prior paragraphs.

82.     The APA provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

83.     The APA provides that the reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).

84.     The APA authorizes the reviewing court to hold unlawful and set aside agency action, including an agency's failure to act, that is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." *Id.* § 706(2)(A), (C)-(D).

85.     The CEA requires that Sleeper's registration be approved upon submission of a complete application. 7 U.S.C. § 6f(a)(1) ("Any person desiring to register as a futures commission merchant, introducing broker, floor broker, or floor trader hereunder ***shall*** be registered ***upon*** application to the Commission . . . ." (emphases added)).

86.     On May 30, 2025, Sleeper submitted its FCM registration application to NFA. On August 28, 2025, Sleeper first received notice from NFA that Sleeper's application was complete and that NFA was prepared to approve Sleeper's FCM registration. On or around the same date, the CFTC instructed NFA not to grant Sleeper's application. Thirty-two days have passed since

August 28, 2025. Despite Sleeper's outreach to the Commission, Sleeper has received no information from the Commission concerning the status of its application notwithstanding NFA's statements indicating that the application is complete. Sleeper knows of no rational, lawful, good faith, or properly motivated reason for the Commission's intervention in or delay of Sleeper's registration.

87.    The inaction of the CFTC and Acting Chairman Pham in her official capacity constitutes unlawful withholding of agency action in violation of 5 U.S.C. § 706(1).

88.    The inaction of Defendants constitutes an unreasonable delay in agency action in violation of 5 U.S.C. § 706(1).

89.    The conduct of the CFTC and Acting Chairman Pham, including the CFTC's instruction that NFA withhold approval of Sleeper's application and the ongoing and unexplained refusal to grant Sleeper's application or to properly advise Sleeper of any deficiencies in Sleeper's application or other grounds for denial or conditional grant of Sleeper's application, constitutes arbitrary and capricious agency action in violation of 5 U.S.C. § 706(2)(A).

90.    The actions alleged herein violate the CEA's requirement that FCM registration be granted upon application absent the existence of enumerated circumstances that do not exist here and therefore constitute agency action or inaction that is not in accordance with the law in violation of 5 U.S.C. § 706(2)(A), and agency action or inaction in excess of statutory authority in violation of 5 U.S.C. § 706(2)(C).

91.    The conduct of the CFTC and Acting Chairman Pham in her official capacity, including the CFTC's instruction that NFA withhold approval of Sleeper's application and its ongoing and unexplained refusal to grant Sleeper's application or advise Sleeper of any deficiencies in Sleeper's application or other grounds for denial of Sleeper's application,

constitutes agency action "without observance of procedure required by law," including the procedures set forth in 7 U.S.C. § 21 and 17 C.F.R. pt. 3, in violation of 5 U.S.C. § 706(2)(D).

92.    Defendants' actions have adversely affected and aggrieved Sleeper and caused Sleeper harm by delaying Sleeper's commencement of FCM activities and frustrating Sleeper's reasonable business expectations and opportunities without lawful justification. No monetary remedy exists for this injury.

## **PRAYER FOR RELIEF**

WHEREFORE, Sleeper prays for relief as follows:

A.    That the Court enter an injunction prohibiting CFTC from interfering with NFA's rendering of a determination on Sleeper's application and to refrain from further interference that is not in accord with the procedures prescribed by the CEA and applicable rules;

B.    That the Court enter judgment declaring that Sleeper is eligible for registration with the CFTC as an FCM in accordance with the CEA and rules and regulations promulgated thereunder;

C.    That the Court enter judgment declaring that the CFTC's intrusion on NFA's process to approve Sleeper's application to operate as an FCM constitutes unlawful withholding of agency action in violation of the APA;

D.    That the Court enter judgment declaring that the CFTC's intrusion on NFA's process to approve Sleeper's application to operate as an FCM constitutes unreasonable delay in agency action in violation of the APA;

E.    That the Court enter judgment declaring that the CFTC's intrusion on NFA's process to approve Sleeper's application to operate as an FCM constitutes arbitrary and capricious agency action in violation of the APA;

F.   That the Court enter judgment declaring that the CFTC's intrusion on NFA's process to approve Sleeper's application to operate as an FCM constitutes agency action that is not in accordance with the law, and agency action in excess of statutory authority in violation of the APA;

G.   That the Court enter judgment declaring that the CFTC's intrusion on NFA's process to approve Sleeper's application to operate as an FCM constitutes agency action without observance of procedure required by law in violation of the APA; and

H.   That the Court grant such other relief as the Court may deem appropriate.

Dated: September 29, 2025                Respectfully submitted,
       Washington, D.C.

                                         /s/ *Joshua B. Sterling*
                                         _____
                                         Joshua B. Sterling (D.C. Bar No. 479320)
                                         MILBANK LLP
                                         1101 New York Avenue NW
                                         Washington, D.C. 20005
                                         jsterling@milbank.com
                                         (202) 835-7500

                                         Sean M. Murphy*
                                         Grant R. Mainland*
                                         Andrew L. Porter*
                                         MILBANK LLP
                                         55 Hudson Yards
                                         New York, NY 10001
                                         smurphy@milbank.com
                                         gmainland@milbank.com
                                         aporter@milbank.com
                                         (212) 530-5000

                                         * *Pro hac vice* application forthcoming